LACOMBE, Circuit Judge
(after stating the facts as above). It is contended by respondent that both the circuit court and this court are concluded by the decree in the Virginia circuit, such decree being rendered in a suit between the same complainant and the principal or employer of defendant Sanders. The difficulty with this contention,' however, is that the Virginia decree is interlocutory only. The whole matter is still open there, and when the case comes up on final hearing that court may enlarge or contract the measure of interlocutory injunctive relief as the record then before it may warrant, without being in any way embarrassed by its prior decision. Certainly, the defendant Sanders can be in-no better position in some other circuit than his principal, W. H. Baker, will be in when his case comes before the Virginia court for further and final adjudication upon a record which contains evidence additional to that adduced in support of the interlocutory decree. Ror is the circumstance that Sanders is selling the alleged infringing pack *891 ages as agent for a nonresident any ground for refusing injunction. He may not be liable for profits which his principal takes, but injunction operates upon the individual, and in a proper case the individual will be restrained from manufacture, preparation, and sale which infringe upon another’s rights, whether he be principal or merely employé.
The law of unfair competition is well settled. It is only the application of that law to individual cases which requires discussion, and quite frequently it becomes necessary to recite the facts at great length in order to demonstrate that there has been such unfair competition, and to point out what precise measure of relief should, under well-settled principles, be accorded to the complainant. In the case at bar, however, it will not be necessary to rehearse all the salient points in the voluminous record now before the court. They have been most exhaustively presented, and their bearing most carefully and elaborately discussed, in the opinion of Judge Paul, rendered in the Virginia case above referred to, and which will be found reported in 77 Fed. 181. It would be a work of supererogation to undertake any restatement of them. Reference to that opinion will fully indicate the proofs upon which our conclusion is based. A brief synopsis, as near as may be in the language of Judge Paul, will be quite sufficient for the purposes of this opinion. The complainant is engaged in the business of manufacturing chocolate, having succeeded to the business originally established about the year 1780 by one James Baker at Dorchester, Mass. The business has been extensive and successful, and its preparations have a high reputation in the markets of the United States. A large amount of money has been spent in advertising it. It is put up in the ordinary size and shape of chocolate packages, wrapped in blue paper, with a yellow label thereon. Upon the top and bottom of this yellow label is a scroll of intertwined leaves, and at each end a coat of arms surmounted by a flag, also surrounded by a scroll of intertwined leaves, bearing in the upper center the words “Baker’s Chocolate” in large type, and the words “W. Baker & Co., Dorchester, Mass.,” in small ■capitals, with a list of some other articles manufactured by the complainant. This blue wrapper and yellow label have been used by complainant and its predecessors for more than 40 years. Complainant’s goods had become well known as “Baker’s Chocolate,” 'and the evidence from the trade shows that when “Baker’s Chocolate” was called for it was understood to be Walter Baker’s chocolate that was intended. The W. H. Baker (or defendant’s) package, which is of the standard shape and size, was (until a modification was made after entry of the interlocutory decree in Virginia) also wrapped in blue paper with a yellow label, having at its top and "bottom a scroll of leaves, and at each end a coat of arms partially .-surrounded by a scroll of leaves. At the top were the words “Established in Mercantile Business 1785.” Below these words, in large type, were the words, “W. H. Baker & Co.’s Chocolate,” and under them, in smaller capitals, the words “Premium Ho. 1.” Then, in -smaller type, was given a description of the goods and directions for *892 using, and finally, at the foot, in small capitals, “W. H. Baker & Co., Winchester, Va.”[1]
The wrapper was the same shade of blue as complainant’s. The yellow label was a shade lighter than complainant’s, and of the same length and width. As is usual in such cases, the alleged infringer insists that he had no intention to dress up his goods to resemble-complainant’s; that, on the contrary, the very identity of the surnames, Baker,' “made him all the more careful to avoid any confusion therefrom,” and that in wrapping his goods he “has used every possible device to accentuate a difference by using a wholly different inscription,—a design of marked dissimilarity; figures that have no possible likeness, and a tout ensemble that strikes the eye of the most casual observer.” His success in accentuating differences has certainly not been remarkable, and it is curious to note-how frequently in cases of this kind the designer’s efforts to produce-wrappers, labels,, and inscriptions which shall be distinctly characteristic of some new make of goods result only in producing confusion with some earlier and well-known brand. In the following-excerpts from Judge Paul’s opinion we fully concur:
“He has taken the testimony of a number of witnesses to prove his high character as a citizen and a business man. In tbe argument great stress' is-laid upon this testimony by respondent’s counsel, as negativing the idea of a fraudulent purpose on the part of the respondent in dressing nn his goods in imitation of the complainant’s. The court cannot give to this evidence the weight to which counsel insist it is entitled. It must in this case, as in every case where intent is the subject of investigation, deduce the intent from the acts of respondent. * * * It is clearly apparent from the testimony of the respondent, and from other evidence in the cause, that in the arrangement between the respondent and Sanders respondent’s name of ‘Baker’ was to play a prominent part in the sale of his goods. When this-testimony is taken in connection with the similarity in shape and size, * * * the identity in color of. the bine wrappers, and tbe similarity of the yellow labels on each, it is impossible to escape the conclusion that it was the purpose of the respondent to put upon the market his goods in such eon *893 dition and appearance that the same might be readily accepted as the goods of complainant. 'That snch was the result, the evidence abundantly shows. * * * The testimony of grocers and consumers * * * abundantly shows that great confusion exists in the trade and with the public between the goods of the complainant and those of the respondent, and that both the trade and the public were deceived into purchasing the goods of respondent when they thought they were getting those of complainant. * * * A careful consideration of the evidence, and an inspection of the packages, wrappers, labels, inscriptions, etc., of the goods of complainant and those of respondent, can lead the court to no other conclusion than that there was deliberate purpose to place the goods of the respondent upon the market in a guise resembling the complainant’s goods as nearly as possible so as to avoid a direct imitation. * * * In the preparation of his goods the respondent has closely imitated the goods of the complainant in the most prominent characteristics in which they are presented to the public. In the plain chocolate the most striking of these prominent characteristics are the shape and size of the packages, the blue wrapper and the yellow label, * * * with the prominent words, ‘Baker’s Chocolate.’ ”
In all of this we fully concur, and it will not be necessary further to refer to some earmarks of intent to deceive which Judge Paul points out, such as the use of the firm name “W. H. Baker & Co.,” when respondent had no partner, and the words, “Established in Mercantile Business 1785,” when respondent had commenced the chocolate business only in 1894. The conclusion of Judge Paul’s opinion is expressed in these words:
“The respondent entering the chocolate market under a firm name so nearly resembling that of complainant, an old-established and well-known concern, did not make the effort incumbent on him to distinguish his goods from those of the complainant so as to prevent confusion. An inspection of the great number of cans, labels, inscriptions, designations, and characteristic mark’s of other dealers in chocolate, American and foreign, produced as evidence in this cause, shows that there is no difficulty in one dealer so preparing his goods as to distinguish them from those of another. With the widest field from which to select wrappers, labels, cans, inscriptions, words, phrases, and designations, the respondent has so nearly simulated in these respects the chocolate goods of the complainant as to lead dealers and customers to believe that they were buying the complainant’s goods, when they were really getting those of the respondent. To prevent this confusion, and to protect the complainant and the public against this unfair competition and deception, an injunction will be entered restraining the respondent in the following particulars: From using in connection with his business as a maker and seller of chocolate * * * the words ‘& Co.’; the words ‘Established in Mercantile Business 1785’; from the use of the yellow label on his plain chocolate, and he will be required to substitute another and entirely different label therefor. * * * The court will not enjoin the respondent from using his name ‘Baker’ in connection with the manufacture and sale of chocolate.”
And an interlocutory decree was entered substantially as set forth in the statement of facts, supra.
The conclusions of the circuit court in Virginia are expressed with no uncertain sound. Unfair competition is found, is condemned, and its continuance enjoined. Preserving to the respondent 1he right to use his name, the court hedges that use about with safeguards calculated to prevent his so using it as to deceive the public. Most drastic provisions to this end are contained in the decree, such as the prohibition of the further use of the yellow label. It must surely have seemed to Judge Paul that when this opinion was filed and this decree entered complainant was fully protected against this unfair competition. Certainly it so seemed to this court upon the *894 argument, and it was difficult at first to conceive what further relief than that embodied in the fourth paragraph of the decree, supra, could be asked for. But inspection of the new style of dressing the goods with the light blue wrapper (shown in the sample attached to appellee’s brief), and the ingenious announcement thereon, “Best Quality now with Blue Label,” and the words “Baker’s Chocolate” still the most prominent feature of the inscription, demonstrates how the letter of the Virginia decree may be followed and its spirit violated.[2] As was said in the quotation supra, “complainant’s goods had become well known as ‘Baker’s Chocolate,’ and when ‘Baker’s Chocolate’ was called for it was understood to be Walter Baker’s chocolate that was intended.” The public do not go into the minuter refinements of the title or the label. Whether it is described as “Walter Baker’s Chocolate,” or “William Baker’s Chocolate,” or “W. EL Baker’s Chocolate,” or “W. H. Baker’s Best Chocolate,” so long as the title contains the words which in trade and among consumers have come to be the every-day designation of complainant’s goods, the chocolate so labeled will naturally be assumed to be complainant’s, unless special care be taken to indicate that it is not. Of course, it would be very easy, under the Virginia decree, to mark the goods “W. H. Baker’s Chocolate,” and still so dress them up that no one of ordinary intelligence would be deceived as to their identity; but that presupposes a bona fide effort to “accentuate differences,”—such an effort as was made by the designer of the package of “Barker’s Chocolate,” which is an exhibit in this case. No such effort has yet been made, and it is hardly to be expected that any such effort ever will be made. The complainant is entitled to relief against further use of a title which causes confusion, provided such relief can be granted without depriving W. H. Baker of the right to use his own name in connection with the chocolate business. The measure of such right is tersely expressed by Judge Paul:
“The doctrine is equally well settled that equity will direct how a man shall use his name in his purpose to denote his own individuality. He will *895 not be allowed to so use his own name as to work an injury to another haying the same name, nor to perpetrate a fraud on the public.”
See, also, Meyer v. Medicine Co., 7 C. C. A. 558, 58 Fed. 884; Landreth v. Landreth, 22 Fed. 41; Pillsbury v. Flour Mills Co., 12 C. C. A. 432, 64 Fed. 841; Brinsmead v. Brinsmead, 12 Times Law,. 631, 13 Ad. 3, and [1897] 1 Ch. 46. And this court had occasion to-refer to the same doctrine in Duryea v. Manufacturing Co. (Dec., 1896) 79 Fed. 651. In that case the defendants placed their goods on the market in packages which prominently displayed the words-“Laundry Starch Prepared by Duryea & Co.,” and it was contended that the defendants’ goods competed unfairly with the starch made-by complainant’s predecessors, and known as “Duryea’s Starch.”" This court said:
“It cannot be denied that by continuous and rightful use for forty years the-name of ‘Duryea Starch’ had become identified with its ‘source of manufacture,’ and that an attempt by persons of the name of Duryea, or of any other name, to put upon the market their own product under the name of ‘Duryea’s Starch’ could be suppressed. Inasmuch as defendants .have not called' their goods by this well-known name,” etc., injunction was refused.
This principle of equity indicates quite clearly what relief may be appropriately accorded to complainant here. W. H. Baker’s-legitimate use of his own name is not interfered with so long as he-is allowed to use it in connection with his chocolate goods, setting forth on labels or advertisements that the chocolate is “made by” or “for,” or “prepared by” or “for,” or “sold by” W. H. Baker, or even that it is made or prepared at W. H. Baker’s factory. But he should not be allowed to use his surname, Baker, whether his given name or its initials are prefixed or. not, so as to announce upon label or advertisement that the goods he sells are “Baker’s Chocolate.”
The interlocutory decree of the circuit court, Southern district of New York, now appealed from, is therefore affirmed in all respects, except as to the third paragraph, -which should be modified so as to read:
“3. From using in connection with the business of making or selling chocolate, on labels, wrappers, cans, boxes, cakes, molds, signs, letter heads, bill' heads, or advertisements, or in any other manner whatsoever, the word ‘Baker,’ ‘Baker’s,’ or ‘Bakers’ alone, or the word ‘Bakers,’ ‘Bakers’,’ or ‘Baker’s,’ (whether the same be or be not coupled with other names or initials) in such a collocation with the word ‘chocolate’ (whether the same be or be not coupled with some further descriptive word or words) as to indicate that the-chocolate so made or sold is a variety of ‘Baker’s Chocolate.’ But defendant may indicate thereon in appropriate language that the chocolate is made or prepared or sold for or by W. H. Baker, of Winchester, Virginia.”
Equally appropriate relief would be afforded to complainant by adopting the method used in the Brinsmead Case, supra. And since it is urged that the expense of making a complete change in alii the particulars above enumerated will be extremely heavy, the mandate will, if defendant prefers, direct a modification of the interlocutory decree solely by requiring the affixing upon every package sold, in type as prominent as the title, of the statement that “W. H. Baker is distinct from and has no connection with the old chocolatemanufactory of Walter Baker & Company.” Unless defendant pre *896 fers this change, the mandate will direct modification as above set forth.
The cause is remanded to the circuit court for further proceedings in accordance with this determination. Costs of this appeal to the appellant.

 The following is a copy of the label of W. H. Baker to which this court ’here refers:

 The following is the label to which the court here refers: