COXE, District Judge.
This is an action to restrain unfair competition in trade. For over 10 years the complainant and its predecessors have been engaged in making and selling a brand of cigars known as the “Hoffman House Boquet.” These cigars were made of tobacco selected with great skill and care and they have been introduced to the public by an elaborate and expensive system of advertising until they have become well known and popular, the annual sales amounting to many millions. Perhaps the most prominent person in perfecting and popularizing these cigars was the defendant Foster. For 17 years he had been connected with Edward and Max Hilson under the firm name of Foster, Hilson & Co. *897 The Hoffman House Boquet cigar originated with Foster; he watched each step of its advancing popularity and to him more than to any other man its success is due. In 1892 the firm of Foster, Hilson & Oo. was converted into a corporation under the name of the Foster-Hilson Company. In April, 1893, Foster disposed of his stock in this company, and has since been manufacturing the “Banquet Hall Boquet” cigar, and introducing it to the public by means which the complainant alleges to be unfair and fraudulent.
The law relating to this subject is well understood. No man has a right to use names, symbols, signs or marks which are intended, or calculated, to represent that his business is that of another. No man should in this way be permitted to appropriate the fruits of another’s industry, or impose his goods upon the public by inducing it to believe that they are the goods of some one else. If A. presents his goods in such a way that a customer who is acquainted with the goods of B. and intends to purchase them is induced to take the goods of A. instead, believing them to be the goods of B., A. is guilty of a fraud which deceives the public and injures his competitor. Where the goods of a manufacturer have become popular not only because of their intrinsic worth, but also by reason of the ingenious, attractive and persistent manner in which they have been advertised, the good will thus created is entitled to protection. The money invested in advertising is as much a part of the business as if invested in buildings, or machinery, and a rival in business has no more right to use the one than the other,—no more right to use the machinery by which the goods are placed on the market than the machinery which originally created them. No one should be permitted to step in at the eleventh hour and appropriate advantages resulting from years of toil on the part of another.
The action is based upon deception, unfairness and fraud and when these are established the court should not hesitate to act. Fraud should be clearly proved; it should not be inferred from remote and trivial similarities. Judicial paternalism should be avoided; there should be no officious meddling by the court with the petty details of trade; but, on the other hand, its process should be promptly used to prevent an honest business from being destroyed or invaded by dishonest means. Judged by these rules the defendants must be found at fault.
No one, it is thought, can read the record without being convinced that the defendants started out with the deliberate purpose to cut into the complainant’s trade, occupy its territory, beguile its customers and share its profits. The purpose to injure the complainant, if not admitted, is hardly disguised. The defendants have used the same means to introduce their cigar that the complainant adopted and although there is not exact identity at any point there is similarity at every point. The defendants’ advertising proceeds upon lines similar to those adopted by the complainant; every step taken by the latter is met by a similar step by the former. The complainant uses the name “Hoffman,” the defendants use the same name though differently spelled. The complainant uses diamond-shaped silver and black price cards and red and gold bands; the defendants *898 do the same. The complainant’s show cards, posters and labels represent a banquet scene in the dining room of the Hoffman House; the defendants produce a similar scene in the dining room of “The Waldorf.” In the use of metal signs, in the size and shape of the cigar, in the use of a picture representing a “smoking man,” in the color of the paper edging of the cigar box and in many other matters of detail the defendants have trodden closely in the footsteps of the complainant. They have evolved nothing original; the plan of their advertising has been copied directly from the complainant.
It is true that many of these similarities are, when considered alone, immaterial and insignificant. If, for instance, the complainant’s right to relief depended upon the color of the bands and box binding, or the size and shape of the cigar, it would be the duty of the court to dismiss the bill as depending upon considerations too trivial and speculative to warrant the interference of a court of equity. The law is not made for the protection of degenerates and paranoiacs, but for the general public composed of men with ordinary common sense and with faculties unimpaired. The task of the court, therefore, will be accomplished if it confines its attention to those similarities which are likely to deceive the ordinary purchaser. Though many of the acts complained of are insufficient to sustain a decree when considered alone, they are all important as tending to establish the general design to poach upon the complainant’s preserve at every point and help to establish the intent of the defendants in their more open and flagrant infringements.
Perhaps the most distinctive advertisement of the complainant is one representing a banquet in the Hoffman House dining room attended by a large number of America’s most conspicuous citizens,— Major McKinley, Mr. Cleveland, Gen. Harrison and Mr. Depew being among them. The latter is on his feet, presumably in the act of addressing the distinguished company. A box of Hoffman House Boquet cigars is being served to the guests. The idea intended to be conveyed, and which is conveyed, by this picture is that the Hoffman House cigar is a favorite upon such occasions and is patronized by the most eminent statesmen and orators of the land. Ho matter how much they may differ upon other questions they are agreed upon the proper cigar to smoke when the rivalries of politics are laid aside and they meet on common ground around the convivial board. The idea was striking and original. It impressed the average smoker. A cigar which suits so many prominent individuals must be a good one. True, banquet scenes have been used before as labels for cigar boxes but not this banquet scene, the central idea of which is the partiality displayed by so many well known citizens for this particular cigar. The picture impresses the average American very much as a German would be impressed if he were informed that the cigar offered Mm is the brand smoked by the Kaiser and Prince Bismarck; or an Englishman, if told that for a moderate price he can cultivate the same taste in tobacco as the Prince of Wales, Lord Salisbury, Mr. Gladstone and Mr. Chamberlain.
This picture the defendants have boldly appropriated. The same distinguished company is assembled; they are drinking the same *899 wine and are listening to the same orator. The critical observer will note the absence of some of the Hoffman House banqueters and the addition of others made prominent by more recent events. But the central idea is there; the general impression is the same. The ordinary purchaser seeing this picture in a cigar shop would be likely to enter and take the cigar offered him supposing it was the same brand which he had learned to distinguish by this distinctive banquet scene. He would not stop to analyze the picture; he would not notice that Mr. Depew stands opposite to President Cleveland whereas in the earlier picture they are on the same side of the table; he would not notice the differences in background or table decorations. The general effect would remain in his memory and the general effect is unquestionably the same. In order to demonstrate the bold character of the piracy the complainant has pointed out instances where minute details and even mistakes have been copied; but it is unnecessary to consider these, for it seems too plain for discussion that the defendants have taken the complainant’s idea and are endeavoring to march into public favor under a flag which they are not entitled to carry.
The foregoing was written under the impression obtained at the argument that the affirmative defense might be disposed of by the maxim, “De minimis non curat lex.” But the more the testimony bearing on this defense has been studied, and it has been read several times, the firmer becomes the conviction that the charge of misrepresentation is most serious. The complainant has placed in its boxes of Hoffman House cigars a picture representing a stripping scene in Havana. On the reverse of the picture is the following state ment:
“We use only tlie very best grades of Havana tobacco, and are the only house in our line in this country making a specialty of fine Havana cigars who have their own stripping factory in Cuba, under the personal supervision of our Mr. Edward Hilson. We manufacture only genuine Havana cigars, and represent our goods as they are. Our cigars are guarantied choice Havana tobacco, not American tobaccos raised from Spanish seed.
“Very respectfully, The Hilson Company.
“Fact. No. 1, 3rd Dist. N. Y.”
It will be observed that this notice is signed by the present complainant, the Hilson Company. The notice could not, therefore, have been used in the business prior to ¡November 29, 1893, when the change in the corporate name took place. The defendants assert that after Poster had retired and the Hilson Company began business under its present management it stated falsely that cigars made wholly and partly of domestic tobacco were genuine Havana cigars. It will be observed that the language used by the complainant is free from all doubt and ambiguity. The card says: “We use only the very best grades of Havana tobacco. * * * We manufacture only genuine Havana cigars. * * * Our cigars are guarantied choice Havana tobacco, not American tobaccos raised from Spanish seed.” The evidence of a special trade meaning for the word “Havana” is very meager and is insufficient to uphold a finding of fact. Even if there were such evidence it is doubtful if it could be considered as these cards are addressed to the consumer, who is not *900 supposed to know the technical language of the cigar trade. The complainant’s words must, then, be given their ordinary dictionary meaning.
The complainant admits that the Hoffman House Boquet cigars are made with Havana fillers, seed binders and Sumatra wrappers; that they have, to a considerable extent, been manufactured by team work; and that they have never been manufactured exclusively of Havana tobacco. Upon these conceded facts is the complainant’s representation true? Assume that an ordinary smoker goes to the complainant’s factory to purchase Hoffman House cigars, and that a box is handed him by the president of the company with the oral statement, “These cigars are guarantied choice Havana tobacco, we make only genuine Havana cigars and use only the best grades of Havana tobacco;” would not the purchaser be justified in believing that he was purchasing cigars, made “only” of Havana tobacco? How could stronger language be employed? It is urged that the card does not say that the cigars are made “wholly” of Havana tobacco; but “only” is a synonym for “wholly” and the statement when read as a whole certainly precludes the idea of the use of domestic tobacco.
It is no answer to this defense to say that the defendant Poster knew of the way in which the Hoffman House cigars were manufactured. There is nothing fraudulent in the way they are made; the fraud consists in representing them to be what they are not. On the other hand it must be remembered that this is an affirmative defense grounded on fraud. Praud must be proved and if the testimony terminated at this point it is possible that the question might be considered doubtful and the doubt resolved in favor of the complainant upon the lines pointed out in Condit v. Gtaccum, 2 TradeMark Becord, No. 29. Certainly this would be the inclination of the court in view of the clear evidence of infringement as before indicated. But the testimony does not stop here. Marx Steinberger was general superintendent and foreman of the complainant’s factory from November, 1893, until March, 1895, and before that time he was employed in a similar capacity by the Poster-Hilson Company. He testified positively and with his memory refreshed by memoranda made at the time that large numbers of the complainant’s cigars were made with mixed Havana and seed fillers, seed binders and Sumatra wrappers and that others were made wholly of seed tobacco except the wrapper, which was Sumatra tobacco. In other words, he testified that the complainant sold large quantities of cheap seed cigars in Hoffman House boxes with the written guaranty that they were “genuine choice Havanas.” This evidence is wholly uncontradicted. Although Edward Hilson is directly implicated by Steinberger neither he nor Max Hilson is called as a witness. Steinberger stands not only uncontradicted and unimpeached but the inference is very strong that it was not possible to contradict him. The excuse that the Hilsons, or their superintendent, if called as witnesses might have been required to reveal business secrets seems wholly insufficient in view of the gravity of the charge and the conceded knowledge of the complainant’s business already possessed by the defendant Foster.
*901 The witness Louis Prince who was called by the defendants is in the complainant’s employ as foreman of the packing department. He was an unwilling witness bnt in many instances he corroborated Steinberger by stating that cigars, which the latter testified were largely or wholly of seed tobacco, went into Hoffman House boxes. It is true that Prince says that he never knowingly packed a seed cigar in a Hoffman House box, but this testimony is unimportant in view of his positive statement that he did not know how the cigars packed by him were made, or what kind of tobacco went into them. There is no escape from the finding of fact that the complainant has sold large quantities of seed cigars, or cigars with mixed fillers, representing them to be genuine Havana cigars. The rule of law applicable to such circumstances is perfectly clear. Equity will refuse to aid a complainant, in cases of this character, who is himself guilty of making material false statements in connection with the property he seeks to protect. Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436; Cigar Co. v. Pozo, 16 Colo. 388, 26 Pac. 556; Fetridge v. Wells, 4 Abb. Prac. 144; Krauss v. Peebles’ Sons, 58 Fed. 585; Seabury v. Grosvenor, 14 Blatchf. 262, Fed. Cas. No. 12,576; Prince Manuf’g Co. v. Prince’s Metallic Paint Co., 135 N. Y. 24, 31 N. E. 990; Connell v. Reed, 128 Mass. 477. It would seem that this rule might be modified so as to permit the court, for the protection of the general public, to enjoin both parties; but so long as it remains the rule of the supreme court it is the duty of inferior tribunals to follow it. The bill must be dismissed.